ALICE B. FIFE *vs.* JULIA R. BLAKE and Husband.

May 21, 1888.

The evidence in this case examined and considered, and *held* not to justify the verdict.

Plaintiff brought this action in the district court for Hennepin county to recover a commission on the sale of real estate for the defendants, under an alleged agreement, whereby, in consideration of her surrender of possession of, and certain contract rights as purchaser in, certain real estate, the defendants placed it in her hands for sale as their agent, and agreed that she might have for her commission for selling all she could get for the property in excess of $1,600. The answer denies the alleged employment, and avers that the transaction between the parties, upon plaintiff's surrender of the possession, etc., was a mere gratuitous promise on their part that she should be allowed to repurchase the property on terms and conditions which she has not complied with. This is put in issue by the reply. At the trial, before *Rea*, J., the plaintiff had a verdict. The defendants appeal from an order refusing a new trial.

*Hale & Peck,* for appellants.

*Smith & Reed,* for respondent.

COLLINS, J. In the years 1883 and 1884, the plaintiff and defendants entered into contracts, whereby defendants agreed to sell to plaintiff, by monthly payments, which plaintiff on her part promised to make, certain lots, upon one of which there was a dwelling-house. Plaintiff entered into possession, and so remained until October, 1885, when, on account of her inability to make her payments, she surrendered her contracts and vacated the premises. Under the pleadings herein, it was incumbent upon plaintiff to establish that there existed an enforceable contract for the repurchase of the property, or for its sale to another, made as a condition to her removal therefrom, or that she had been duly constituted defendants' agent to sell the premises, and had so sold. The case was tried by a jury, and at the conclusion of plaintiff's testimony defendants

moved for dismissal, which was denied; whereupon they proceeded with their witnesses, and a verdict for plaintiff was had. The inquiry now is, was there sufficient evidence to sustain such verdict?

The most that can be gathered from a careful perusal of the testimony as to what transpired when plaintiff surrendered possession is that she gave up one key to defendants' agent, retaining another with which to enter the house, with the "understanding" that she was to sell if she could; within what time, upon what terms, or for what sum was not even discussed. This does not tend to establish that there were any terms contemplated or exacted, or that any conditions were imposed when she surrendered her contracts. But, if it did, the verdict could not be sustained, because the damages herein were not measured by the rule applicable in such cases; they were fixed by the jury at the amount plaintiff was to make by the sale in excess of the sum she would have to pay defendants for the property.

The next inquiry is whether there is testimony reasonably tending to sustain the plaintiff's contention that she was then or thereafter created defendants' agent to sell, and was to have as her commission all that the property would bring over and above an amount to be determined by defendants, and finally fixed at $1,600. Upon this the majority of the court is of the opinion that the testimony is insufficient, and that a new trial must be awarded. That the plaintiff found parties who would exchange Dakota lands for the lots, providing they could borrow $1,000 upon them,—which sum they must have to use in part-payment to defendants for the lots; that plaintiff negotiated for such a loan, and at the same time, in her own behalf, for an equally indispensable loan of $600 upon the lands,—and thus for sufficient to make up the $1,600 to be paid defendants; that she failed in her efforts to obtain either sum; that the defendants had knowledge of her efforts to sell, and of the proposed trade; that they knew more or less of the scheme whereby she hoped to arrange matters so as to secure 320 acres of land in Dakota (subject to an incumbrance of $600) out of the lots, and did not object, but to a degree encouraged, the plan,—is beyond question, as is the further fact that they were informed of the payment to plaintiff by her customers of the sum of $50, as earnest-money, long before they tendered a deed, ac-

companied by the unfair and arbitrary demand that the consideration therefor should be immediately paid. But does this indicate or tend to warrant the belief that defendants employed plaintiff to make a sale for them, that the relation of principal and agent existed between the parties, and that the commission was agreed upon at such sum as she might be able to realize in excess of the amount defendants might ultimately conclude would satisfy them? Not only must defendants have employed plaintiff in their interest and behalf, but there must be testimony tending to justify the evident conclusion of the jurors that they also agreed to give or allow her, as compensation for selling, the amount she might receive over and above $1,600, which was, in fact, much less than was due when plaintiff abandoned her claim upon the property, and was only determined after much "beating down" by her.

As it is not claimed that the precise terms of the agreement are to be found in the testimony, the one necessary to sustain the verdict must be made out, if at all, from an examination of the different conversations between the parties, and in the light of the surrounding circumstances. The defendants were husband and wife; the former dealing in real estate. The plaintiff was a married woman, not engaged in the real-estate business as an occupation. She had bought of defendants the property in question in 1883, and, after nearly three years' possession, found herself unable to meet the small monthly payments as they matured. Her debt had increased, instead of diminished. She had abandoned all hope of paying, and had moved out unconditionally. Anxious to realize something out of the property, she solicited from defendants the privilege of selling, with the understanding that, should she find a customer, defendants would fix a price, without regard to the amount due when plaintiff vacated; and with the expressed hope, upon their part, that by this plan she should save something for herself. These efforts to find a customer were not rewarded until about January 1st, when, informed that defendants would accept $1,600 cash, (less than would have been due under the cancelled contracts,) she closed the bargain for the Dakota lands, receiving $50 as earnest-money, and giving the receipt introduced in evidence. This does not mention plaintiff as an

agent for any one, but is her individual receipt for $50, in part-payment of the lots "which I have this day sold," and bears date January 2d. The tenor of this writing does not indicate that plaintiff was acting as an agent, but for herself alone. Nor do the letters from one of the defendants to plaintiff—one dated December 17th; the other, December 21st—intimate that plaintiff was then regarded as defendants' agent, but rather as a purchaser to whom had been given an opportunity to buy at the sum of $1,700. January 4th, two days after giving the receipt, plaintiff had an interview with defendant John D. Blake, and, after trying to obtain the property for $1,500, told him she had made the trade, had received $50 upon it, and was to get the Dakota lands. The contract was not shown, although plaintiff told Blake about it, nor was the $50 paid him. Nothing further was done towards consummating a sale until March, when the plaintiff, securing the needed funds, notified defendants to make out a deed, and "fulfil their contract," as she was ready to pay the purchase price. A deed was duly executed, in which plaintiff was grantee, and tendered her in the office of defendants' agent, with a demand that she pay the consideration money within six minutes. This she could not do, and in all probability it was not intended that she should; for, had it been, the tender made later on would have been accepted, and this controversy happily avoided. Why so short a time was given plaintiff in which to produce her money, or why the sum agreed upon was not received in the afternoon, and the deed delivered, have no bearing upon the questions at issue; for if the plaintiff had been constituted the agent of defendants, and had sold the property as authorized, she would be entitled to her commissions without any demand for a deed, or tender of the amount of the purchase price. But the fact that the consideration was formally tendered, and the deed to plaintiff demanded, suggests to our minds that the latter then considered herself as one who had bargained for the property, and not as an agent who, having found a purchaser upon terms prescribed by her principal, had earned her commission. On all these occasions, it seems to us that she was acting in her own interests, and not for defendants, upon various gratuitous parol promises that if she could devise any scheme whereby she could repurchase,

directly or indirectly, she could have all that could be made over the amount which, under the circumstances, and perhaps apparent hardship, of the case, the defendants might fix as sufficient to satisfy their claim. These promises were without consideration, and therefore invalid.

Order reversed.